**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| MITCHELL FARKAS, | ) | |
| | ) | |
| Movant/Defendant, | ) | |
| | ) | |
| v. | ) | 1:06-cr-00119-UWC-JEO |
| | ) | 1:07-cv-08033-UWC-JEO |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

Mitchell Farkas (hereinafter the "defendant") initiated the present action by filing a *pro se*

motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  (CV Doc. 1).[1]

In that motion, the defendant claims that this court was without jurisdiction to convict or

sentence him and that his appointed counsel was constitutionally ineffective.  Upon consideration

of the defendant's arguments, the court finds that the motion is due to be denied.

**I.      BACKGROUND**

On March 29, 2006, the grand jury for the United States District Court for the Northern

District of Alabama returned a one-count indictment against the defendant, charging him with

possession of a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

(CR Doc. 1).  At the time of said indictment, the defendant was already in federal custody at the

Federal Correctional Institution in El Reno, Oklahoma, serving a sentence imposed by the United

States District Court for the Middle District of Louisiana.  (*See* CV Doc. 1 at 5; CV Doc. 5 at 3;

CR Doc. 13 at 2; CR Doc. 21 at 2).  Following the indictment, a magistrate judge of this court

---

[1]References to "Doc. ___" are to the documents as numbered by the Clerk of the Court in the Court's record in this case.  The pleadings from the original criminal case, which is case number 1:06-cr-00119-UWC-JEO, are designated as "CR Doc. ___," while the pleadings in the civil case seeking to vacate pursuant to 28 U.S.C. § 2255, which is case number 1:07-cv-08033-UWC-JEO, are designated as ("CV Doc. ___").

issued a warrant for the defendant's arrest.  (*See* unnumbered CR Docket entry dated 3/30/2006).

On April 20, 2006, the defendant was brought before this court, where he was arraigned and pled

not guilty.  (*See* unnumbered CR Docket minute entry dated 4/20/2006).  At that time, attorney

Charles Scott Linton was appointed to represent him.  (*See id.*; CR Doc. 2).

On May 3, 2006, defendant's counsel moved to suppress all evidence associated with a

search of the Anniston, Alabama, residence shared by the defendant with his then-wife, Virginia

Farkas (hereinafter "Mrs. Farkas" or the "defendant's wife"), which was conducted by deputy

United States Marshals on October 30, 2002.  (*See* CR Doc. 8).  Specifically, this motion sought

exclusion of several weapons, the defendant's possession of which formed the basis of the

indictment against him, as well as ammunition, documentation, and any statements that arose

from the search.  (*Id.*)  The motion alleged that, after staking out the defendant's residence, the

deputy Marshals followed him to a nearby auto parts store where they arrested him on an

outstanding warrant issued by a federal district court in Louisiana.  (*Id.* at 1-2).  According to the

defendant, the deputy Marshals attempted at that time to have him sign a consent form

authorizing them to go search his residence, but he refused.  (CV Doc. 10 at 8, 9, 10).  After

arresting the defendant, the deputy Marshals had the defendant transported to Birmingham while

they returned to his residence where they encountered the defendant's wife in the yard.  (CR Doc.

8 at 2).  According to the motion to suppress, the deputy Marshals "took [her] at gunpoint from

outside the house to the inside, where they proceeded to conduct a warrantless search."  (*Id.*).

Counsel for defendant argued that the search violated the Fourth Amendment because the

consent given for the search by Mrs. Farkas was the product of coercion. (*Id.* at 1-2).

On May 19, 2006, the magistrate judge held an evidentiary hearing on the defendant's

motion to suppress. (*See* unnumbered CR Docket minute entry dated 5/19/2006). At the hearing, testimony was given by two former deputy Marshals as well as by the defendant's now-ex-wife. According to that testimony referenced in the magistrate judge's report and recommendation (*see* CR Doc. 11), the defendant's wife was initially told about federal harboring and false statement statutes and of her right not to consent to a search of the property, but she was helpful and cooperative with the officers and authorized them to conduct a search. (*Id.* at 2). The defendant's wife similarly testified that she was not threatened or coerced into giving consent to the search. (*Id.*) The magistrate judge's report also references that the defendant's wife executed a written consent form while outside the residence, authorizing the search (*id.* at 2 (citing GX 1)), as well as a written statement prepared by her memorializing the fact that she had consented to the search and that the weapons found were not hers. (*Id.* at 3 (citing GX 2)).

On cross-examination, defense counsel explored the fact that the defendant's wife had previously given a deposition in which she claimed that she did not consent to the search. (*See id.* at 3 n.2). In that September 2003 deposition, the defendant's wife had related that three or four deputy Marshals had come to the residence and that, upon exiting the vehicle, one of the officers kept hollering at her and was pointing his weapon at her. (*See* CV Doc. 10, "Attachment Page 9-10; 12-13; 14-17"(hereinafter "Mrs. Farkas Deposition" or "Mrs. Farkas Dep.") at 6-7). She further alleged that this officer grabbed her by the arm and that he and the other officers escorted her inside the residence. (Mrs. Farkas Dep. at 9-12). At that point, she said, they began to search without asking for permission. (*Id.* at 13-14). During the deposition, she was presented with a "Consent to Search (Enforcement Operations)" form (hereinafter the "Consent Form") used by the Marshals Service that purported to bear her signature evidencing her consent to the

search, but she claimed that the signature is not hers. (*See id.* at 16-17; United States Exhibit 9 to Mrs. Farkas Dep.)  The defendant's wife likewise claimed that she did not sign a Marshals Service "Advisement of Federal Statutes" form (hereinafter the "Advisement Form"), also purporting to bear her signature, which advised of certain federal offenses and the penalties for conviction thereof, including concealing a person from arrest and making false statements to federal officials.  (*See* Mrs. Farkas Dep. at 28-29; United States Exhibit 14 to Mrs. Farkas Dep.") By contrast, the defendant's wife admitted during that deposition that she did write the salient contents of, and signed, another document stating that she gave consent to the search, that only she and the defendant lived at the residence, and that the weapons found therein were not hers. (*See* Mrs. Farkas Dep. at 19-23; United States Exhibit 10 to Mrs. Farkas Dep.)  However, she contended that she wrote and signed that document only because the deputy Marshals kept loudly threatening that they would take her to jail if she did not do so.  (Mrs. Farkas Dep. at 23-24).  The defendant's wife also admitted signing a "Federal Prisoner's Property Receipt" form detailing the items found on the defendant at the time of his arrest.  (Mrs. Farkas Dep. at 18-19; United States Exhibit 8 to Mrs. Farkas Dep.)  At the evidentiary hearing on the motion to suppress, the defendant's wife acknowledged that she had given the deposition testimony that she did not give consent to the search voluntarily, but she stated that such earlier testimony was false and was given because the defendant had made threats against her. (*See* CR Doc. 11 at 3 n.2).

On May 31, 2006, the magistrate judge issued his report and recommendation in which he concluded that the search of the defendant's residence did not violate the Fourth Amendment and that the defendant's motion to suppress was therefore due to be denied.  (CR Doc. 11 at 3). Specifically, the magistrate judge credited the testimony of the deputy Marshals and the

defendant's ex-wife given at the suppression hearing indicating that the latter had consented to

the search knowingly, intelligently, and voluntarily. (*Id.* at 3). The magistrate judge recognized

that the defendant's ex-wife had given prior inconsistent testimony that she had not voluntarily

consented and that the deputy Marshals had employed coercive tactics, but he found that such

prior statements were not credible and resulted from the witness's fear of the defendant, as she

had claimed at the hearing. (*Id.* at 3 n.2).

Following the issuance of the magistrate judge's report and recommendation, the

defendant changed his plea to guilty on June 15, 2006.[2] (*See* CR Docs. 12, 13; unnumbered entry

on CR Docket dated 6/15/2006). In exchange for his plea of guilty, the United States agreed to

recommend that the defendant receive a three-level reduction under the Sentencing Guidelines

for acceptance of responsibility and that he be sentenced at the low end of the advisory guideline

range. (CR Doc. 13 at 1). As a part of the plea agreement, the defendant relinquished his right to

appeal his conviction or to file a motion pursuant to 28 U.S.C. § 2255, except that the defendant

reserved his right to raise a claim of ineffective assistance of counsel or to contest punishment

that constitutes an upward departure from the advisory guideline sentencing range (*Id*. at 8-9).

On October 10, 2006, the district court accepted the defendant's plea and sentenced him to 180

months, to run concurrently with his federal conviction entered by the federal district court in

Louisiana. (*See* CR Doc. 21). The defendant did not appeal.

The defendant filed his instant motion to vacate, set aside or vacate his sentence pursuant

to 28 U.S.C. § 2255 on October 16, 2007. (CV Doc. 1). In support, he first argues that this court

---

[2] Several days after the defendant changed his plea to guilty, the undersigned district judge entered a memorandum opinion and contemporaneous order adopting and accepting the report and recommendation of the magistrate judge, denying the defendant's motion to suppress. (*See* CR Docs 15 & 16).

lacked jurisdiction over him because a writ of habeas corpus *ad prosequendum* was not utilized to bring him from the federal prison in Oklahoma to face the weapons charge in this court (*id.* at 5-6; CV Doc. 10 at 3, 4). He also argues his trial counsel was constitutionally ineffective in violation of the Sixth Amendment (1) by failing to argue that this court lacked jurisdiction, (CV Doc. 1 at 6-7; CV Doc. 10 at 3, 5-7); (2) by failing to hire a handwriting expert to determine whether or not his ex-wife's signature was on the Consent Form and the Advisement Form, (*id.*); and (3) by allegedly failing to fully argue or appeal his Fourth Amendment claim regarding the legality of the search. (CV Doc. 1 at 8; CV Doc. 10 at 8-11). The United States has filed a response in opposition, in which it argues that the jurisdictional claim is due to be rejected both because the defendant waived any such claim pursuant to his plea agreement and because it fails on the merits. (*See* CV Doc. 5 at 3-4). The United States further maintains that all of the defendant's ineffective-assistance-of-counsel claims are without merit, because the defendant cannot show either constitutionally deficient performance by his trial counsel or the requisite prejudice. (*Id.* at 4-8). The defendant filed a traverse (CV Doc. 9), as well as an amendment/supplement to his initial § 2255 motion, which includes a number of evidentiary attachments. (*See* CV Doc. 10).

## II.    DISCUSSION

### A.    The Jurisdictional Claim

The defendant first argues that this court lacked jurisdiction to convict or sentence him because he was brought before it from the federal prison in Oklahoma without a writ of habeas corpus *ad prosequendum*. The government responds that the defendant has waived this claim pursuant to the terms of his plea agreement and that it is due to fail on the merits. The court

6

agrees with the government.

First, when he entered his guilty plea in this case, the defendant agreed to waive his right to seek relief pursuant to 28 U.S.C. § 2255, with the exception of claims alleging ineffective assistance of counsel and certain claims related to the calculation of his sentence.  That waiver is evidenced by the plea agreement.  (CV Doc. 13 at 8-9).  The Eleventh Circuit Court of Appeals has held that an appeal waiver provision in a plea agreement is enforceable if the waiver is made knowingly and voluntarily.  *See United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001); *United States v. Pease*, 240 F.3d 938, 942 (11th Cir. 2001).  Similarly, a waiver of collateral review has also been approved by the Eleventh Circuit so long as the United States demonstrates that the waiver was made knowingly, intelligently, and voluntarily.  *Allen v. Thomas*, 161 F.3d 667 (11th Cir. 1998); *United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993).  The present record demonstrates that the defendant's assent to the terms of his plea agreement, including his waiver of the right to seek relief in a § 2255 motion, was knowingly, intelligently, and voluntarily made.  Indeed, the defendant does not claim otherwise.  Accordingly, the plea agreement, including its waiver provisions, is enforceable against the defendant.

The defendant has sought to characterize this claim, however, as a challenge to this court's "subject matter" jurisdiction.  (CV Doc. 1 at 5; CV Doc. 10 at 4).  If that were so, the claim would not be forfeited or waived, because subject-matter jurisdiction involves a court's power to hear a case and its lack would render the judgment void.  *See United States v. Cotton*, 535 U.S. 625, 630 (2002); *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008); *United States v. Peter*, 310 F.3d 709, 712-13 (11th Cir. 2002); *McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001).  Nonetheless, a claim challenging the manner in which an accused

7

has been brought before the court to answer on a criminal charge does not implicate the court's subject matter jurisdiction, *i.e.*, its *power* to try a defendant.[3] *See United States v. Alvarez-Machain*, 504 U.S. 655, 661-662 (1992); *Frisbie v. Collins*, 342 U.S. 519, 522 (1952); *United States v. Arbane*, 446 F.3d 1223, 1225 (11th Cir. 2006); *Remeta v. Singletary*, 85 F.3d 513, 518-19 (11th Cir. 1996). Rather, such is, at most, a claim challenging the court's exercise of personal jurisdiction over the accused, which is subject to waiver. *See Ford v. United States*, 273 U.S. 593, 606 (1927); *United States v. Grote*, 632 F.2d 387, 388 (5th Cir. 1980).[4] Accordingly, the defendant's claim here is subject to, and precluded by, the waiver provisions of his plea agreement.

But even assuming that the defendant had not waived this claim by virtue of his plea agreement, it would fail on the merits. Because the defendant was already in federal custody, it was not necessary to secure his presence in this court to answer for additional federal charges through the use of the writ of habeas corpus *ad prosequendum*. *See In re Extradition of Michele Sindona*, 584 F. Supp. 1437, 1443 (E.D.N.Y.1984) ("The transfer of the defendant from one federal facility to another federal facility or to a federal court did not require the issuance of a writ *ad prosequendum*.") Rather, that writ is employed where federal authorities desire to compel the production for trial of an accused in the custody of a *state* or other sovereign. *See id.*

---

[3]Even assuming that the defendant asserts a true claim attacking subject matter jurisdiction, he cannot prevail. The federal district courts have original subject matter jurisdiction of all offenses against the laws of the United States. 18 U.S.C. § 3231; *see also* U.S. CONST. art III § 2 ("The judicial Power shall extend to all Cases ... arising under .. the Laws of the United States.") Here, the government charged the defendant with an offense against the laws of the laws of the United States, specifically 18 U.S.C. 922(g)(1), so this court had subject matter jurisdiction to adjudicate whether he was guilty of the offense. *See De La Garza*, 516 F.3d at 1271; *McCoy v. United States*, 266 F.3d 1245, 1252 & n.11 (11th Cir. 2001).

[4]All decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

8

at 1442-44*; see also generally Carbo v. United States*, 364 U.S. 611, 615 (1961) (detailing the history and use of the writ).  Thus, the defendant is simply wrong in his contention that he could only be lawfully brought before this court pursuant to the writ of habeas corpus *ad prosequendum*.  But even if he was correct on that point, this claim would still be without merit.  "[A] criminal defendant cannot defeat personal jurisdiction by asserting the illegality of the procurement of his presence in the relevant jurisdiction."  *Arbane*, 446 F.3d at 1225; *see also Frisbie,* 342 U.S. at 522; *Remeta,* 85 F.3d at 518-19.  Therefore, even assuming that there was, in fact, some error in the procedure or in the specific type of writ, warrant or other process employed to bring him before this court, the defendant still would not be entitled to have his conviction or sentence set aside or to any other relief under § 2255.   This claim is due to be denied.

### B.      Ineffective Assistance of Counsel

The defendant also alleges that he was denied effective assistance of counsel, in violation of the Sixth Amendment.  Specifically, he now asserts that his trial counsel was ineffective by: (1) failing to argue that the district court lacked jurisdiction to try him on the theory that the government was required to secure his appearance in this court pursuant to a writ of habeas corpus *ad prosequendum*, (2) failing to hire a handwriting expert to determine whether the defendant's ex-wife's signature was on the Consent Form or the Advisement Form associated with the search of the Anniston residence, and (3) by failing to fully argue or appeal the Fourth Amendment claim.  The United States retorts that the claims are without merit.  (CV Doc. 5 at 4-8).

A convicted defendant's claim that counsel's assistance was so defective

as to require reversal of a conviction or . . . sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The defendant must satisfy two

requirements to prevail on an ineffective assistance of counsel claim.  He must show that

(1) 'counsel's representation fell below an objective standard of reasonableness,' *Strickland*, 466 U.S. at 688, and that (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' *id*. at 694.  In this circuit, we have referred to the latter element as the 'prejudice' prong and the former element as the 'performance' prong.

*Reece v. United States*, 119 F.3d 1462, 1464 n.4 (11th Cir. 1997).  When considering such

claims, a court need not address both components because a failure to demonstrate either prong

constitutes a failure to demonstrate ineffective assistance of counsel.  *Bottoson v. Moore*, 234

F.3d 526, 532 (11th Cir. 2000); *see also Reece*, 119 F.3d at 1464 n.4.

In examining the first prong under *Strickland*, the Eleventh Circuit has articulated the

relevant considerations as follows:

The standard for counsel's performance is reasonableness under prevailing professional norms.  The purpose of ineffectiveness review is not to grade counsel's performance. . . .  To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled. . . .  The petitioner must establish that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance.

Courts must indulge [the] *strong presumption* that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.  Thus, counsel cannot be adjudged incompetent for performing in

10

a particular way in a case, as long as the approach taken might be considered sound trial strategy.  Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one. . . . [B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a *petitioner must establish that no competent counsel would have taken the action that his counsel did take*. . . .

　　　　　In reviewing counsel's performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time.  [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Johnson v. Alabama*, 256 F.3d 1156, 1176-77 (11th Cir. 2001) (quoting *Chandler v. United States*, 218 F.3d 1305, 1313-16 (11th Cir. 2000) (en banc) (citations and internal quotation marks from *Chandler* omitted in *Johnson*) (emphasis added).

　　　　　With regard to the second prong under *Strickland*, it is not enough to show that an error had some conceivable effect on the outcome of the proceeding.  *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002).  To succeed on an ineffective assistance claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.  The court now turns to the defendant's specific ineffective-assistance claims, which are addressed in turn.

### 1.  Failure to Raise the Jurisdictional Issue

　　　　　The defendant asserts that his counsel was ineffective by failing to argue that the district court lacked jurisdiction to try him based on the fact that his appearance in this court was not secured by a writ of habeas corpus *ad prosequendum*.  (CV Doc. 1 at 6).  For the reasons stated above, however, such a claim is entirely without merit.  *See ante* at 6-9.  Therefore, neither *Strickland* prong can be satisfied,  as the failure to raise the claim was not deficient performance

and did not engender any prejudice.  This claim is due to be denied.

### 2.   The "Handwriting Expert" Claim

The defendant next contends that his counsel was ineffective because he failed to obtain or call at the suppression hearing a handwriting expert to testify that the defendant's wife had not signed the Consent Form authorizing the search or the Advisement Form.  The defendant emphasizes that his wife testified in the 2003 deposition that she had not signed either form and that she had not voluntarily consented to allow the deputy Marshals to search the residence.  He thus urges that, had an expert been retained, the result of the motion to suppress would have been different because expert testimony that the defendant's wife did not sign such documents would have impeached the credibility and testimony of the defendant's wife and the deputy Marshals, who each testified at the hearing that the defendant's wife signed the relevant documents and voluntarily consented to the search.

The court concludes that, regardless of whether the defendant might satisfy *Strickland*'s performance prong,[5] the defendant cannot show a reasonable probability that the outcome of his suppression hearing would have been different had his counsel consulted a handwriting expert. Here, the defendant simply presumes that if a handwriting expert had been consulted, such expert would have provided testimonial evidence in support of his contention that his wife did not sign

---

[5]Whether to consult with or call an expert witnesses is ordinarily a strategic choice that courts are hesitant to second-guess on habeas review.  *See Osborne v. Terry*, 466 F.3d 1298, 1308-09 (11th Cir. 2006); *Dorsey v. Chapman*, 262 F.3d 1181, 1186 (11th Cir. 2001); *Grayson v. Thompson*, 257 F.3d 1194, 1221 (11th Cir. 2001); *see also, e.g.,United States v. Tarricone*, 21 F.3d 474, 476-77 (2d Cir. 1993) (holding that counsel was not ineffective where he made a strategic choice that a handwriting expert was not necessary because he could have thought that jurors could discern on their own the differences between the defendant's handwriting and the handwriting that appeared on a particular document).  However, there is no testimonial evidence in the record regarding the motivations of counsel in connection with whether to call a handwriting expert. Accordingly, the court concludes that an attempt in this context, at least at this point, to characterize counsel's failure to call a handwriting expert as "strategic" might ring more of a "*post-hoc* rationalization of counsel's conduct [rather] than an accurate description of [his] deliberations...."  *Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003).  However, because this claim fails on *Strickland*'s prejudice prong, it is unnecessary to inquire further into whether counsel's performance could be viewed as constitutionally deficient.

the Consent Form or the Advisment Form.  "Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative."  *See United States v. Guerra*, 628 F.2d 410, 413 (5th Cir.1980).  "[M]erely contending that trial counsel should have hired a handwriting expert, without any evidence that the expert would testify favorably to Petitioner does not entitle Petitioner to relief under § 2255."  *Hall v. United States*, 2008 WL 867892, *3 (M.D. Tenn. 2008) (citing *Winston v. Ashcroft,* 16 Fed. Appx. 612, 613 (9th Cir. 2001); *United States v. Davis,* 2000 WL 1195573 at *1 (9th Cir. 2000)); *accord United States v. Mohammad*, 999 F. Supp. 1198, 1202 (N.D. Ill. 1998) ("[The defendant] also argues that [his counsel] should have hired a handwriting expert, but fails to claim that such an expert was available and willing to testify on his behalf or describe what the testimony of that expert would have been.  These allegations are insufficient."); *cf. Aldrich v. Wainwright*, 777 F.2d 630, 637 (11th Cir.1985) (speculation insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.); *United States v. Traeger*, 289 F.3d 461, 472 (7th Cir. 2002) ("A defendant's speculation about what evidence might have been found is insufficient to establish prejudice-[the defendant] must show what the evidence would have been and how it would have produced a different result.") Finally, even assuming that a handwriting expert was available to testify as the defendant hopes, it is undisputed that the defendant's wife did sign certain other relevant documents that the deputy Marshals presented to her at that time.  The defendant's counsel also elicited evidence at the suppression hearing from the defendant's wife that she had made prior sworn statements in the deposition that she did not voluntarily consent to the search in this case.  There is not a reasonable likelihood that the court's

determination that the defendant's wife voluntarily consented to the search would have been

different simply because a handwriting expert might have theoretically been able to lend some

incremental support contesting whether she signed Consent Form or the Advisement Form.  This

claim is without merit.

### 3.  The Failure to Fully Argue or Appeal the Fourth Amendment Claim

The defendant also argues that his counsel was ineffective for failing to fully argue or

appeal Fourth Amendment issues regarding the refusal of the court to suppress the weapons

found at his residence.  The defendant essentially makes two arguments in support of this claim.

First, the defendant asserts that competent counsel would have argued on appeal that the search

of his residence was unconstitutional because, the defendant says, any purported consent by his

then-wife to the warrantless search was coerced rather than voluntarily.  (*See* CV Doc. 10 at 8-9).

Second, the defendant claims alternatively that, even assuming that his wife's consent was

voluntary, competent counsel would have argued that the search still violated the Fourth

Amendment under *Georgia v. Randolph*, 547 U.S. 103 (2006), because the defendant allegedly

had previously been asked upon his arrest to consent to a search of his residence and he refused.

Neither argument is availing.

### a.  The Voluntary Consent Issue

It is well established that, in the absence of a defendant who is present and affirmatively

objecting, a warrantless search of premises is generally justified under the Fourth Amendment

when based upon voluntary consent given by a third party who shares or even reasonably appears

to share a right of occupancy.  *See United States v. Matlock*, 415 U.S. 164 (1974); *Illinois v.*

*Rodriguez*, 497 U.S. 177 (1990); *United States v. Brazel*, 102 F.3d 1120, 1148 (11th Cir. 1997);

*United States v. Mathis*, 96 F.3d 1577, 1584 (11th Cir. 1996).  The defendant contends, however, that his counsel was constitutionally ineffective because he failed to present on appeal the claim that a Fourth Amendment violation occurred based upon the fact that the defendant's wife allegedly did not voluntarily consent to the search of their residence.  The problem with the defendant's claim is, in short, that it proceeds from the unjustified assumption that an appellate court might ignore the credibility choices and findings of fact made by the magistrate judge, and accepted by the district court, to the effect that the defendant's wife did, in fact, give knowing and voluntary consent to the search (*see* CR 11 at 3-4; CR Docs. 15 & 16).  In reviewing a district court's denial of a motion to suppress, the Eleventh Circuit reviews the findings of fact only for "clear error," and all facts are construed in the light most favorable to the government. *United States v. Mercer*, 541 F.3d 1070, 1073-74 (11th Cir. 2008) (citing *United States v. Ramirez*, 476 F.3d 1231, 1235-36 (11th Cir. 2007)).  In other words, even had his counsel pursued an appeal challenging the denial of his motion to suppress, there could be no relitigation of the underlying factual disputes resolved against him that were dispositive of his Fourth Amendment claim.  The evidence offered at the suppression hearing to support that the defendant's wife's consent was freely and voluntarily given is more than ample.  Accordingly, the Eleventh Circuit would have simply credited that evidence and summarily rejected any Fourth Amendment claim founded upon contrary allegations.  Because any appeal of the Fourth Amendment voluntariness issue was obviously futile, the failure to pursue such an appeal was neither deficient performance nor prejudicial under *Strickland*.  This claim is without merit.

**b.  The *Georgia v. Randolph* Issue**

Finally, the defendant argues that his counsel was deficient by failing to argue in the

district court or on appeal that, even assuming that his wife voluntarily consented, the search still violated the Fourth Amendment.  More specifically, the defendant now alleges that, upon his arrest, the deputy Marshals asked him to sign a consent form so that they could search his home, but he refused, and the officials only then proceeded to the residence in an attempt to procure consent from his wife.  (CV Doc. 10 at 8, 9, 10).  Defendant further alleges that his appointed counsel was aware of these events (*see id.* at 10).  He claims, therefore, that his counsel was constitutionally ineffective in his failure to argue that, based upon the Supreme Court's decision in *Georgia v. Randolph*, 547 U.S. 103 (2006), even if his wife voluntarily consented, the search was unlawful in the face of the defendant's own prior express refusal.  The court disagrees.

In *Randolph*, a woman had summoned police in the wake of a domestic dispute, and when they arrived, she volunteered that her husband was a cocaine user and that there were "items of drug evidence" in the house.  *Id.* at 107.  Police sought the husband's consent to search the house, and when he "unequivocally refused" they asked the wife for consent, which she "readily gave."  *Id.*  She then led the police inside to where they saw a straw apparently with cocaine residue, and on that basis the police obtained a warrant by which further evidence of drug use was obtained.  *Id.*  The husband was arrested and thereafter moved to suppress the evidence as products of a warrantless search of his house unauthorized by his wife's consent over his express refusal.  *Id.* at 107-08.  The trial court denied the motion, ruling that the wife had common authority to consent to the search, but the Court of Appeals of Georgia and the Georgia Supreme Court ruled to the contrary.  547 U.S. at 108.  The United States Supreme Court granted the state's petition for certiorari to consider a question it had left open in *United States v. Matlock*, 415 U.S. 164 (1974), and over which courts had split: whether voluntary consent by a

third party with a right of occupancy is valid to justify a warrantless search where the defendant is present at the time police seek permission to search and expressly refuses. *Id.* & n.1. The United States Supreme Court in a 5-3 decision agreed with the Georgia appellate courts and held that the search violated the Fourth Amendment. *Id.* at 108.  The majority explained that the "constant element in assessing Fourth Amendment reasonableness in the consent cases ... is the great significance given to widely shared social expectations, which are naturally enough influenced by the law of property, but not controlled by its rules." *Id.* at 110 (citation omitted). Thus, the reasonableness of such searches, the Court stated, "is in significant part a function of commonly held understanding about the authority that co-inhabitants may exercise in ways that affect each other's interests." *Id.*  In *Matlock*, for example, the Court recounted, the entry and search was justified by a "common understanding" that police might harbor regarding the common authority of tenants generally when they share quarters, which would include "that any one of them may admit visitors, with the consequence that a guest obnoxious to one may nevertheless be admitted in his absence by another."  547 U.S. at 111.  By contrast, the Court proposed, "it is fair to say that a caller standing at the door of shared premises would have no confidence that one occupant's invitation was a sufficiently good reason to enter when a fellow tenant stood there saying, 'stay out.'  Without some very good reason, no sensible person would go inside under those conditions."  547 U.S. at 113.  The Court explained, "[s]ince the co-tenant wishing to open the door to a third party has no recognized authority in law or social practice to prevail over a present and objecting co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all." *Id.* at 114.  Ultimately, therefore, the Court held "that a

warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id.* at 120.

The Court recognized, however, that by so holding, it was leaving a "loose end" regarding the continued significance of its third-party consent decisions in *Matlock* and *Illinois v. Rodriguez*, 497 U.S. 177 (1990). *Randolph*, 547 U.S. at 121. The Court acknowledged that the defendant in *Matlock* was not present at the inception of the search and thus had no opportunity to object, but he was in a police squad car not far away; in *Rodriguez*, the defendant was actually asleep in the apartment, where police might have roused him after their entry based upon the consent of an apparent co-tenant. *Id.* The *Randolph* majority concluded, however, that it would adhere to what was admittedly a "fine line," namely, that "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." *Id.* Explaining that it was sufficiently comfortable with that formalism, the Court stated: "So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it." *Id.* at 121-22.

The defendant argues that his counsel was constitutionally ineffective for failing to argue a claim based on *Randolph*. However, the Eleventh Circuit has held many times that "'[r]easonably effective representation cannot and does not include a requirement to make

18

argument based on predictions of how the law may develop." *Jackson v. Herring, Sec'y of Fla. Dept. of Corrections*, 429 F.3d 1278, 1313 (11th Cir. 2005) (quoting *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir.1994)); *see also Thompson v. Wainwright*, 787 F.2d 1447, 1459 n. 8 (11th Cir.1986) ("defendants are not entitled to an attorney capable of foreseeing the future development of constitutional law"). The thrust of the defendant's claim here is that he refused an official request to consent to the search after he was arrested, but at a time and place remote from when consent was granted by his wife. The fact is, though, neither the United States Supreme Court nor the governing court of appeals has ever held that a search conducted under such circumstances violates the Fourth Amendment. Rather, under circuit precedent that pre-dates *Randolph*, the search here was valid based upon voluntary consent given by the defendant's wife, even if law enforcement officials were aware that the defendant had previously refused consent. *See United States v. Baldwin*, 644 F.2d 381, 383 (5th Cir. Unit A May 1981) ("Although Baldwin previously had refused consent, his wife could still consent to a search of the automobile where, as here, it appeared she had at least joint control over the auto."). And based upon its underlying facts and its language, *Randolph* stands for a narrowly drawn rule that invalidates consent of a third party only where a defendant is *both* (1) physically present and (2) expressly objecting when police seek consent from the third party. *Randolph*, 547 U.S. at 121. Although the defendant here asserts he previously refused a request for consent, he undisputedly was *not* present at the residence when would have done so, which distinguishes his case from *Randolph*.[6] Accordingly, then, to prevail on a claim asserting that the defendant's refusal of

---

[6] *Randolph* does create a potential exception that would prohibit a warrantless search where "the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection." 547 U.S. at 121-22. The defendant does not allege that such occurred here. Nor could a colorable argument have been made to that end in his case. The officers arrested the defendant on a valid outstanding warrant at a location remote from the residence, and he was transported elsewhere for processing. These circumstances do not themselves suggest suspicious motives. *See United States v. McKerrell*, 491 F.3d 1221, 1228-29 (10th Cir. 2007); *Reed*, 539 U.S. at 598-99. Moreover, the arrest and search occurred in 2002, more than three years before *Randolph*, during a time when the Eleventh Circuit recognized the applicability of *Matlock*'s third-party consent rule "even when a present subject of the search objects." *Lenz v. Winburn*, 51 F.3d 1540, 1548 (11th Cir. 1995). It is therefore wholly implausible that officers would attempt to manipulate circumstances to take advantage of a narrow legal exception that had yet to be recognized. *See People v. Olmo*, 18 Misc.3d 307, 310, 846 N.Y.S.2d 568, 570-71 (N.Y.Sup. 2007)

consideration in deciding whether to search nullifies the voluntary consent given by his wife would have necessarily required a material extension of the narrowly drawn rule in *Randolph* and would also implicate a break from *Baldwin*.  Even assuming that the defendant communicated an objection to the search to the deputy Marshals following his arrest and made his appointed counsel aware of such objection,[7] the court concludes that the failure of his counsel to pursue a claim based on *Randolph* did not fall below the standard of performance required under *Strickland*.

And even assuming that the defendant could show deficient performance, he cannot show prejudice.  Courts addressing the issue have recognized that the analysis in *Randolph* focuses upon the perceived unreasonableness in proceeding with a search where there is a direct conflict between the express wishes of two co-inhabitants who are both physically present at the colloquy with police and that the case's prohibition thus does not extend to occasions where the defendant objects to a search, but he does so only at remote time or place.  *See United States v. Henderson*, 536 F.3d 776, 777 (7th Cir. 2008); *United States v. Groves*, 530 F.3d 506, 512 (7th Cir. 2008); *United States v. Hudspeth*, 518 F.3d 954, 959-61 (8th Cir. 2008) (en banc); *United States v. Dominguez-Ramirez*, 2006 WL 1704461, *9 (M.D. Fla. 2006); *United States v. Reed*, 539 F.3d 595, 596-97 (7th Cir. 2008); *but cf. United States v. Murphy*, 516 F.3d 1117 (9th Cir. 2008) (holding that where the defendant expressly objected at the scene, was then arrested and removed, consent granted by a third party two hours later did not validate the search).  This is also the position of a respected commentator on search and seizure law:

---

("[T]he police would have had no reason to keep defendant in his apartment building, nor did they have any motive to circumvent (as yet undecided) *Randolph* by removing defendant to the precinct.")

[7] Although the defendant's filed materials include two rather lengthy handwritten letters to his counsel exploring in detail issues relating to his wife's consent to the search (*see* CV Doc. 10, "Attachment Letters to Counsel"), the court notes that nowhere in either letter does the defendant suggest that officials sought his consent or that he had objected to the search.  If the defendant's appointed counsel was not made aware of an alleged objection communicated by the defendant to the officials upon his arrest, counsel would have had no basis whatsoever to suspect, never mind argue, a possible application of *Randolph*, even by extension, given that the defendant was not present at the residence when his wife would have consented to the search.

> prior refusal of the absent occupant to give consent would not present a bar to the
> police seeking consent from a co-occupant. No less so than in the situation where
> the defendant actually told the joint occupant not to admit the police, the other
> occupant retains his 'own right' to allow a search and the defendant has
> participated in a living situation in which there inheres the risk that in the
> defendant's absence another occupant might admit the police. That conclusion is
> not placed in doubt by *Georgia v. Randolph*, reaching a contrary result where
> defendant was present and objecting, for *Randolph* is grounded in the 'widely
> shared social expectations' of co-inhabitants, which includes the understanding
> 'that a guest obnoxious to one may nevertheless be admitted in his absence by
> another.'

4 W. LaFave, Search and Seizure: A Treatise On The Fourth Amendment § 8.3(d) (4th

ed. 2008 update) (footnotes omitted). Because the defendant was not present at the scene when

the deputy Marshals sought and obtained consent from his wife, the court concludes that any

claim based on an alleged prior objection to the search communicated after his arrest at a remote

location would not have been found to invalidate the search based on the voluntary consent of his

wife. This claim alleging ineffective assistance of counsel is due to be denied.

## III.     CONCLUSION

Premised on the foregoing, the defendant's motion to vacate his sentence pursuant to 28

U.S.C. § 2255 is due to be dismissed with prejudice. An appropriate order denying this motion

will be entered contemporaneously herewith.

Done the 4th day of November, 2008.

_____
U.W. Clemon
United States District Judge

21